UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| RONALD D. MURRAY, JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> JASON LENE, et al., ) <br> ) <br> Defendants. ) | Case No. 2:07CV00033 ERW |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants' Motion for Summary Judgment [doc. #61].

## I. PROCEDURAL BACKGROUND

On July 13, 2007, Plaintiff Ronald D. Murray, Jr. ("Plaintiff") filed suit against Adair County Deputy Jason Lene; Christine Steele, a Children's Services Worker for the Missouri Department of Social Services; the Director of the Missouri Department of Social Services; the Sheriff of Adair County, Missouri; the Board of County Commissioners for Adair County, Missouri; and Kayela Vittetoe, Plaintiff's ex-wife. Plaintiff alleged the following causes of action: violation of constitutional rights, malicious prosecution, false arrest, and intentional infliction of emotional distress. On October 31, 2007, Christine Steele and the Missouri Department of Social Services were dismissed, with prejudice, from the case. Subsequently, on February 21, 2008, default judgment was entered against Kayela Vittetoe. Defendants Jason Lene, the Sheriff of Adair County, Missouri, and the Board of County Commissioners for Adair County, Missouri

(collectively, "Defendants") remain in the case. On September 8, 2008, Defendants filed the pending Motion for Summary Judgment.

## II. BACKGROUND FACTS[1]

The Court begins by noting that, in a Motion for Summary Judgment, the Local Rules require the nonmoving party to "include a statement of material facts as to which the party contends a genuine issue exists," and to provide specific references to the record for those matters contested by the nonmoving party. Local Rule 7-4.01(E). Any matters that are not specifically controverted by the nonmoving party are deemed admitted for the purpose of summary judgment. *Id.* Local rules such as this are implemented in order to prevent district courts from having to "scour the record looking for factual disputes." *Nw. Bank & Trust Co. v. First Illinois Nat'l Bank*, 354 F.3d 721, 725 (8th Cir. 2003).

In addition, Federal Rule of Civil Procedure 56(e) requires the nonmoving party to respond to a Motion for Summary Judgment, but, in doing so, it "may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." This requires the nonmoving party to present "'more than a scintilla of evidence.'" *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 812 (8th Cir. 2008) (quoting *Williams v. City of Carl Junction*, 480 F.3d 871, 873 (8th Cir. 2007)). The district court "'is not obligated to wade through and search the entire record for some specific facts which might support the nonmoving party's claim.'" *Holland*

---

[1]The Court's recitation of the facts is taken from Defendants' Statement of Undisputed Material Facts and Plaintiff's Statement of Undisputed Material Facts.

*v. Sam's Club*, 487 F.3d 641, 644 (8th Cir. 2007) (quoting *Pedroza v. Cintas Corp. No. 2*, 397 F.3d 1063, 1069 (8th Cir. 2005)).

Plaintiff failed to comply with the Local Rules and the Federal Rules of Civil Procedure in two respects. First, he denied a number of the facts Defendants included in their Statement of Undisputed Material Facts, but failed to provide specific references to the record to support those denials, as required by Local Rule 7-4.01(E). The Eighth Circuit has confirmed that when a response to a statement of undisputed fact fails to comply with the requirements of the Local Rules, that statement may be deemed admitted. *Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1033 (8th Cir. 2007). As a result of Plaintiff's failure to properly deny any of the facts, the Court will deem admitted each fact contained within Defendants' Statement of Undisputed Material Facts.

Second, Plaintiff set forth some new assertions in his own Statement of Undisputed Material Facts, but failed to cite to competent record evidence to support those assertions. Rather, Plaintiff relied merely on the allegations he made in his own First Amended Complaint for support. Relying on the allegations made in one's own pleadings is not sufficient to establish a genuine issue of material fact. *Patel*, 515 F.3d at 812. Thus, these assertions will not be considered in determining whether summary judgment should be granted in this case.

Turning now to a discussion of the facts, Plaintiff and his ex-wife, Kayela Vittetoe, had joint legal and physical custody of their two children under a 2003 Decree and Joint Parenting Plan. Plaintiff lives in Iowa, while Ms. Vittetoe lives in Missouri. On May 29, 2005, the children began spending time with Plaintiff, so they were physically located in the state of Iowa. Under the terms of the 2003 Decree and Joint Parenting Plan, as modified and by Plaintiff and Ms. Vittetoe's

3

agreements under it, Plaintiff was to return the children to Ms. Vittetoe in Missouri by July 10, 2005.[2]

On July 7, 2005, Plaintiff alleged to an Iowa social worker that Ms. Vittetoe and her husband had sexually abused the children. As a result of this allegation, an Iowa social worker contacted the Missouri Division of Family Services, which investigated Plaintiff's claim, along with the assistance of Defendant Deputy Jason Lene. The Missouri Division of Family Services implemented a safety plan while the investigation of the allegations continued. The plan, dated July 8, 2005, provided that, "Harvey and Cheryl Stewart [Ms. Vittetoe's parents] will watch the children. Billy [Ms. Vittetoe's husband] and Kayela will have no contact with the kids until Christine [the Missouri Division of Family Services case worker] says [it is] appropriate."

Plaintiff did not return the children to Ms. Vittetoe, Ms. Vittetoe's parents, the Missouri Division of Family Services, or anyone else in Missouri, on or before July 10, 2005. Defendant Lene talked to Plaintiff on the phone about the safety plan, but Plaintiff refused to return the

---

[2]In his Answer to Defendants' Motion for Summary Judgment, Plaintiff contests the accuracy of this July 10 date by arguing that Defendant Lene never provided a source for this information. However, Plaintiff has failed to present any competent evidence that demonstrates that the return date was otherwise. Instead, he argues that Defendant Lene was being "forgetful and evasive" in his testimony and suggests that Defendant Lene did not properly investigate the custodial relationship between Plaintiff and Ms. Vittetoe. To support this allegation, Plaintiff cites to a question asked of Defendant Lene in his deposition by Plaintiff's counsel regarding whether he had "obtained a copy of the court's order with regard to the custody of the Murray children." It is unclear whether Plaintiff's counsel was referring to the Joint Parenting Plan approved by the Circuit Court of Randolph County or the safety plan issued by the Missouri Division of Family Services. Thus, contrary to Plaintiff's implication that Defendant Lene was lying, when he responded that he had seen a copy of the order, it is unclear what exactly he was referencing.

In fact, Plaintiff himself agreed that the probable cause statement correctly reflected that July 10 was the agreed-upon return date. (Def. Ex. G). Further, because of Plaintiff's failure to properly deny Defendants' statement that Plaintiff was supposed to return the children to Missouri on July 10, 2005, he is deemed to have admitted this fact.

children to Missouri. According to Plaintiff, he told Defendant Lene that, "as the court-ordered custodian, he could not relinquish the children to their maternal grandparents without a court order requiring that he do so, but that he would certainly comply with such an order, if issued." Nothing in the 2003 Decree and Joint Parenting Plan, or any modifications to it, purported to so restrict Plaintiff.

Ms. Vittetoe filed a complaint with the Adair County Sheriff's Office about Plaintiff's detention of the children in Iowa past July 10, 2005. Defendant Lene had never confronted a situation like this before, so he spoke with the Adair County Attorney, Mark Williams, before taking any action. Mr. Williams suggested that Defendant Lene prepare a probable cause statement, which he did. The statement did not include Plaintiff's alleged assertion that he would not relinquish the children to their grandparents, but that he would comply with a court order to that effect, if issued. Mr. Williams, who was also Adair County's Prosecuting Attorney, initiated a prosecution against Plaintiff for child abduction. In a sworn statement, Mr. Williams stated that he would have proceeded with the prosecution regardless of whether Defendant Lene reported Plaintiff's alleged offer to return the children to Missouri upon receipt of a court order requiring him to do so.

After the prosecution was initiated, Plaintiff was arrested by the Cedar Rapids, Iowa Police Department, detained for about a month, and eventually released on his own recognizance. A grand jury declined to indict Plaintiff, and Mr. Williams then dismissed the prosecution. Before this incident, Defendant Lene did not know, or even know of, Plaintiff. There is nothing to suggest any improper motive harbored by Defendants Lene against Plaintiff. Further, Defendant Lene knew of no Adair County officer who has committed any constitutional violation, much less

5

one that would involve an allegation of malicious prosecution, false arrest, or any sort of claim of inaccuracy in a probable cause statement. He knew of no Adair County policy, practice, custom, habit, guideline, or procedure that was the moving force behind his actions.

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its very terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Further, if the nonmoving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the nonmoving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e)(2). When the burden shifts, the nonmoving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the nonmoving party must show there is sufficient evidence favoring the nonmoving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

## IV. DISCUSSION

### A. VIOLATION OF CONSTITUTIONAL RIGHTS

Although it is difficult to discern the precise constitutional violations of which Plaintiff complains, it appears from his First Amended Complaint that he has alleged three different violations: unreasonable seizure under the Fourth Amendment; unreasonable force under the Fourth Amendment; and violation of due process under the Fifth and Fourteenth Amendments.

#### 1. <u>Unreasonable Seizure</u>

Plaintiff claims that Defendants violated his "right to be free from unreasonable seizures as provided by the Fourth Amendment of the United States Constitution." An unlawful seizure or false arrest claim relies on the substantive Fourth Amendment right to be free from unreasonable searches and seizures. *Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1389 (8th Cir. 1986). To establish a false arrest claim, Plaintiff must demonstrate both that a seizure occurred and that the seizure was unreasonable. *Hawkins v. City of Farmington*, 189 F.3d 695, 702 (8th Cir. 1999).

To determine if a person was seized within the meaning of the Fourth Amendment, the relevant inquiry is whether, "in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *United States v. Clark*, 743 F.2d 1255, 1258 (8th Cir. 1984). Under the Fourth Amendment, an arrest is definitively considered to be a seizure. *Id.*; *United States v. Ilazi*, 730 F.2d 1120, 1123 (8th Cir. 1984). As Plaintiff was arrested and subsequently incarcerated for approximately a month, it is clear that there was a seizure within the meaning of the Fourth Amendment.

In determining whether the seizure was reasonable, the relevant inquiry is whether the police officer had probable cause to arrest Plaintiff. *United States v. Sturgis*, 238 F.3d 956, 959

(8th Cir. 2001). An officer has probable cause if "'the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense.'" *Smithson v. Aldrich*, 235 F.3d 1058, 1062 (8th Cir. 2000) (quoting *Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1389 (8th Cir. 1986)). An officer is entitled to rely on his or her training and experience in considering the circumstances, and should proceed in the manner of a reasonably cautious officer. *Hannah*, 795 F.2d at 1389. "'The probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" *Id.* (quoting *United States v. Wallraff*, 705 F.2d 980, 990 (8th Cir. 1983)).

It is clear that Defendant Deputy Jason Lene and Adair County's Prosecuting Attorney, Mark Williams, had probable cause to bring charges against Plaintiff and to issue a warrant for his arrest. A prudent person, considering the totality of the circumstances, could easily come to the conclusion that Plaintiff was guilty of child abduction, under Mo. Rev. Stat. § 565.156.[3] The offense of child abduction is committed if a person, "[a]t the expiration of visitation rights outside the state, intentionally fails or refuses to return or impedes the return of the child to the legal custodian in Missouri." Mo. Rev. Stat. § 565.156. Defendant Lene understood that Plaintiff and Ms. Vittetoe had, pursuant to their Joint Parenting Plan, agreed that their children would stay

---

[3]In their Motion for Summary Judgment, Defendants engage in a probable cause analysis for both child abduction and parental kidnapping. The Court will only address probable cause for child abduction, as it is only necessary to find that probable cause exists for one offense. This decision was made in the interest of brevity and conciseness, and not because of Plaintiff's claim that because he was only charged with child abduction, "any discussion of parental kidnapping is irrelevant." This is clearly not the case. Prosecutors have very broad discretion to charge, *United States v. Rodgers*, 18 F.3d 1425, 1429 (8th Cir. 1994), so the failure to charge Plaintiff with parental kidnapping is meaningless with respect to the probable cause analysis. It is enough that there was probable cause to believe that Plaintiff committed *any* offense, not just the one with which he was ultimately charged. *See generally Devenpeck v. Alford*, 543 U.S. 146, 153-56 (2000).

9

with Plaintiff in Iowa in the early summer. He was also aware that the children were supposed to return to their mother's residence in Missouri on July 10, 2005. Prior to the agreed-upon return date, Ms. Vittetoe agreed with the Missouri Division of Family Services to abide by the terms of a safety plan. The safety plan provided that when Ms. Vittetoe was to have custody of the children, they would instead stay with her parents; the plan did not alter or expand Plaintiff's custodial rights in any way.[4] Defendant Lene was aware of the safety plan and, thus, knew that the children were supposed to begin staying with their grandparents on July 10, 2005. However, on July 10, Plaintiff failed to return the children to their grandparents' house in Missouri. Upon learning of this from another deputy, Defendant Lene contacted Plaintiff and learned that he had no intention of returning the children to Missouri. These facts, taken together, clearly demonstrate that Plaintiff was supposed to take the children to Missouri on July 10, 2005, and that he intentionally failed to do so. Thus, Defendant Lene had probable cause to believe that Plaintiff had committed the offense of child abduction. Further, Defendant Lene communicated all of this information to Prosecutor Williams, who, therefore, also had probable cause to believe that Plaintiff had committed the offense of child abduction. As a result, both the issuance of the warrant and Plaintiff's subsequent arrest were lawful, and his unreasonable seizure claim must fail.

---

[4]In his Answer to Defendants' Motion for Summary Judgment, Plaintiff suggests several times that the safety plan in effect expanded his custodial rights, making him no longer obligated to return the children to Missouri on July 10, 2005. This argument is unsound and incorrect. Under the "Weekend and Weekday Schedule" and the "Schedule Changes" provisions of their Joint Parenting Plan, Plaintiff and Ms. Vittetoe had agreed that the children would stay in Iowa with their father until July 10. The safety plan did not have any effect whatsoever on this agreement, it merely changed with whom the children would be staying in Missouri, when they returned on July 10. The return date agreement was an enforceable custodial arrangement, and a court order was not required for the Plaintiff to take the children to their grandparents' house.

In his Answer to Defendants' Motion for Summary Judgment, Plaintiff focuses largely on Defendant Lene's failure to include several facts in his probable cause statement, specifically: that Plaintiff and Ms. Vittetoe shared joint legal and physical custody of the children; that Ms. Vittetoe had agreed to a safety plan whereby she would temporarily have no contact with the children; and that Plaintiff told Defendant Lene that he would not release the children to their grandparents without a court order. It is well-established that "[a] warrant based upon an affidavit containing 'deliberate falsehood' or 'reckless disregard for the truth' violates the Fourth Amendment." *Bagby v. Brondhaver*, 98 F.3d 1096, 1098 (8th Cir. 1996) (quoting *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). Plaintiff has set forth no substantive evidence of any improper motive on the part of Defendant Lene, thus, Plaintiff's deficient affidavit argument must be based on reckless disregard for the truth, rather than deliberate falsehood. In a case in which an officer is accused of "submitting a recklessly false affidavit," the officer is entitled to qualified immunity "if a corrected affidavit would still provide probable cause to arrest or search." *Id.* at 1099.

If included in the probable cause statement, none of the statements Plaintiff asserts Defendant Lene should have included would have changed the existence of probable cause. First, including the joint custody statement would have no effect whatsoever on the probable cause determination because a parent having joint custody of his or her child, as opposed to some other custodial arrangement, is irrelevant to the crime of child abduction. Under the terms of their Joint Parenting Plan, Plaintiff and Ms. Vittetoe had agreed that the children would stay with Plaintiff until July 10, 2005. Retaining the children in Iowa beyond that date violated the custody agreement, regardless of his status as joint custodian. Next, including the statement that Ms. Vittetoe had agreed not to have contact with the children would not have had any effect on the probable cause determination because this fact was already known by Prosecutor Mark Williams.

11

Prosecutor Williams made the decision to charge Plaintiff with child abduction, notwithstanding knowing about the safety plan. Finally, including the statement that Plaintiff would release the children to their grandparents if given a court order would not have had any effect on the probable cause determination because irrespective of whether Mr. Williams had that information, he would have prosecuted Plaintiff. Prosecutor Williams gave a sworn statement in which he stated that he could not recall whether he knew of this information, but that it would not have had any effect on his decision to prosecute.

Further, it is not necessary to reach the qualified immunity inquiry, because Plaintiff has failed to prove that Defendant Lene acted with reckless disregard for the truth. The uncontroverted evidence shows that Defendant Lene acted in good faith in drafting the probable cause statement and that his "only intention in acting as [he] did was to have justice done with respect to what seemed to be an offense." (Def. Ex. A). Plaintiff has failed to produce any evidence that would call this conclusion into question.

Plaintiff has failed to produce evidence that demonstrates that a genuine issue of material fact exists with respect to his unreasonable seizure claim. Therefore, Defendants are entitled to summary judgment on this claim.

**2.  Unreasonable Force**

"'The right to be free from excessive force in the context of an arrest is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures.'" *Ngo v. Storlie*, 495 F.3d 597, 604 (8th Cir. 2007) (quoting *Samuelson v. City of New Ulm*, 455 F.3d 871, 877 (8th Cir. 2006)). Excessive force claims are to be analyzed "under a reasonableness standard to determine whether, in light of the facts and circumstances, the officer's actions were objectively reasonable." *Gill v. Maciejewski*, 2008 WL 4777127, at *2 (8th Cir. 2008). Police

officers are given some leeway, because they "'are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

In this case, there have been no allegations of excessive force whatsoever. Plaintiff merely claims in his First Amended Complaint that "Defendants . . . did violate Plaintiff Ronald R. Murray, Jr.'s Constitutional liberty interest to be free from arbitrary, unnecessary violence perpetuated by government officials in that the force used against him was greater than appeared reasonable at the time." Later, in the Intentional Infliction of Emotional Distress section of his First Amended Complaint, Plaintiff briefly suggests that the "force" of which he is complaining was the act of "handcuffing him and wrenching his arms behind him." Of course, these were actions taken by members of the Cedar Rapids, Iowa Police Department, none of whom are defendants in this case. Further, even if Plaintiff had definitively established that the arresting officers handcuffed him and wrenched his arms behind his back, such actions are standard in carrying out an arrest and are entirely reasonable. Other than this brief assertion, Plaintiff has produced no evidence to support this claim, and the record fails to demonstrate that any genuine issue of material fact exists regarding the use of excessive force. Defendants are therefore entitled to summary judgment on this claim.

### 3. **Due Process**

It is difficult to discern precisely how Plaintiff alleges that Defendants violated his due process rights, since Plaintiff merely states in his First Amended Complaint that, "Defendants . . . did violate Plaintiff Ronald R. Murray, Jr.'s Constitutional right to liberty and/or the due process of law as provided by the Fifth and Fourteenth Amendments of the United States Constitution." However, in his Answer to Defendants' Motion for Summary Judgment, Plaintiff briefly suggests

13

that Defendants violated his fundamental right to custody and control of his children. He vaguely argues that "Defendant Lene acted with reckless indifference to Plaintiff's fundamental rights as a parent - rights he asserted repeatedly to Defendant Lene and the County of Adair during the time leading up to his arrest." It is unclear *what* exactly Defendant Lene did that demonstrated reckless indifference, but presumably Plaintiff is referencing the enforcement of the Missouri Division of Family Services safety plan and the subsequent arrest of Plaintiff. The Court will presume that this is the due process violation he is alleging.

The United States Supreme Court has long recognized the "fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000). Though the fundamental right to familial integrity is well-established, the Supreme Court has never held that the right is absolute or unqualified. *See Lehr v. Robertson*, 463 U.S. 248, 256 (1983) ("The intangible fibers that connect parent and child . . . are woven throughout the fabric of our society . . . [and] are sufficiently vital to merit constitutional protection *in appropriate cases*." (emphasis added)). The right has to be balanced against the government's compelling interest in protecting children. *See Santosky v. Kramer*, 455 U.S. 745, 766 (1982). In fact, "the vast majority of cases . . . tend to conclude that a clearly established violation of a constitutional right does not occur when a fundamental right is balanced against a child abuse investigation." *Omni Behavioral Health v. Miller*, 285 F.3d 646, 654 (8th Cir. 2002).

In this case, it cannot be said that Defendants violated Plaintiff's constitutional right to the care and custody of his children. Any disruption in custodial rights occurred as a direct result of the Missouri Division of Family Services investigation and Plaintiff's failure to abide by its terms. The interest of the government in conducting the child abuse investigation and in subsequently

14

issuing a custodial arrangement clearly outweighs either parent's fundamental right to familial integrity.[5] Further, Defendant Lene was merely enforcing the custodial arrangement; if the actual custodial arrangement did in fact violate Plaintiff's due process rights, the claim should have been made against Christine Steele, the agent who made the arrangement with Ms. Vittetoe, or the director of the Missouri Department of Social Services. However, both Ms. Steele and the director were dismissed with prejudice from this case. This lack of causation between the deprivation and the Defendants' actions means that Plaintiff's due process claim must fail.

Further, courts throughout the United States have definitively established that, absent a showing of improper motive, child welfare workers are entitled to qualified immunity for the discretionary functions that they serve. *See Callahan v. Lancaster-Lebanon Intermediate Unit 13*, 880 F. Supp. 319, 330-31 (E.D. Pa. 1994) (citing 17 cases in which courts have denied liability due to qualified immunity, including *Doe v. Hennepin*, 858 F.2d 1325 (8th Cir. 1988)). In determining if qualified immunity applies, "'the court must first determine whether the allegations amount to a constitutional violation, and then, whether that right was clearly established.'" *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 812 (8th Cir. 2008) (quoting *Hayek v. City of St. Paul*, 488 F.3d 1049, 1054 (8th Cir. 2007)). Even assuming, contrary to the Court's prior conclusion, that there was a violation of Plaintiff's constitutional due process rights, Plaintiff cannot demonstrate the second element of qualified immunity: that his constitutional right to familial integrity was clearly established at the time of the violation.

---

[5]It is important to note that whether the safety plan devised by the Missouri Division of Family Services was the proper response to the allegations of sexual abuse is not at issue in this case. Rather, the focus of this case is whether Defendant Lene and Adair County acted reasonably in enforcing the safety plan.

In deciding whether a constitutional right is "clearly established," the proper inquiry is "'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *White v. McKinley*, 519 F.3d 806, 813 (8th Cir. 2008) (quoting *Clemmons v. Armontrout*, 477 F.3d 962, 965 (8th Cir. 2007)). No reasonable officer would have believed that he was violating Plaintiff's constitutional rights by carrying out the terms of the safety plan devised in the interest of the children by the Missouri Division of Family Services. The Eighth Circuit has noted several times that "[t]he need to continually subject the assertion of this abstract substantive due process right to a balancing test which weighs the interest of the parent against the interests of the child and the state makes the qualified immunity defense difficult to overcome. Moreover, the requirement that the right be clearly established at the time of the alleged violation is particularly formidable." *Omni Behavioral Health v. Miller*, 285 F.3d 646, 653-54 (8th Cir. 2002); *Manzano v. S.D. Dep't of Soc. Servs.*, 60 F.3d 505, 510 (8th Cir. 1995). Thus, even if he violated Plaintiff's constitutional right to familial integrity, Defendant Lene is protected from liability through qualified immunity.

In addition, Adair County[6] is protected from liability, even if Plaintiff's constitutional right to familial integrity was violated. Municipalities cannot be liable "under § 1983 on a respondeat

---

[6]As noted by Defendants in their Memorandum in Support of their Motion for Summary Judgment, claims against Defendant Lene in his official capacity, the Adair County Sheriff in his official capacity, and the Adair County Board of Commissioners in their official capacities are merely claims against Adair County itself. *See Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)) ("A suit against a government actor in his official capacity is treated as a suit against the governmental entity itself."). Also, because Plaintiff failed to specify whether he was suing the Adair County Board of Commissioners in their individual capacities, official capacities, or both, it is presumed that he only sued the Board of Commissioners in their official capacities. *See Artis v. Francis Howell N. Band Booster Ass'n*, 161 F.3d 1178, 1182 (8th Cir. 1998) ("If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity.").

superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). However, liability can exist where a "policy or custom is the moving force behind a constitutional violation" or where training procedures or officer supervision is inadequate. *See Larkin v. St. Louis Housing Auth. Dev. Corp.*, 355 F.3d 1114, 1117 (8th Cir. 2004); *Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991). The uncontroverted evidence, to which Plaintiff admitted by failing to properly deny, shows that there was no Adair County policy, practice, custom, habit, guideline, or procedure that was the moving force behind Defendant Lene's actions. Further, Plaintiff has set forth no evidence that Adair County's training procedures or officer supervision were inadequate; on the contrary, Defendant Lene's act of approaching the County Attorney when presented with a new situation suggests that the officers were given responsible instruction and training. Thus, Adair County cannot be held liable for any violation by Defendant Lene of Plaintiff's constitutional right to familial integrity.[7]

**B.    MALICIOUS PROSECUTION**

In addition to his constitutional claims, Plaintiff has also asserted three state law claims, the first of which is malicious prosecution. The elements of a cause of action for malicious prosecution in Missouri are: "(1) the commencement of a prosecution against the plaintiff; (2) the instigation by the defendant; (3) the termination of the proceeding in favor of the plaintiff; (4) the want of probable cause for the prosecution; (5) the defendant's conduct was actuated by malice;

---

[7]In his Answer to Defendants' Motion for Summary Judgment, Plaintiff makes the rather creative argument that "the affidavit of Mark. L. Williams [Adair County Attorney and Prosecutor] provides the basis for *Monell* liability." Mr. Williams, who is not a party to this case, advised Defendant Lene to file a probable cause statement, and then used that probable cause statement in initiating the prosecution of Plaintiff. This in no way establishes an Adair County policy or custom of violating constitutional rights. If anything, it demonstrates that the officers and prosecutor in Adair County follow procedures to ensure that probable cause exists before an arrest, thereby protecting the constitutional rights of those accused of a crime.

17

and (6) the plaintiff was damaged." *Sanders v. Daniel Int'l Corp.*, 682 S.W.2d 803, 807 (Mo. 1984) (en banc). It is clear that, in light of the above analysis, Plaintiff's state law malicious prosecution claim must fail. First, it cannot be said that there is a "want of probable cause" in this case, as the Court has already determined that Defendant Lene and Prosecutor Mark Williams had probable cause to believe that Plaintiff had committed the offense of child abduction. Further, Defendants have presented evidence that Defendant Lene acted in good faith, and not for a malicious purpose, and Plaintiff has not presented any contrary evidence that would create a genuine issue of material fact. Thus, Defendants are entitled to summary judgment on this claim.

**C.    FALSE ARREST**

Plaintiff also asserts a state law false arrest claim. A person has a cause of action for false arrest in Missouri when there "'is confinement without legal justification by the wrongdoer of the person wronged.'" *Day v. Wells Fargo Guard Serv. Co.*, 711 S.W.2d 503, 504-05 (Mo. 1986) (en banc) (quoting *Rustici v. Weidemeyer*, 673 S.W.2d 762, 767 (Mo. 1984) (en banc)). Thus, the two elements required for the offense are: "restraint of the plaintiff against his will, and the unlawfulness of that restraint." *Blue v. Harrah's N. Kansas City, LLC*, 170 S.W.3d 466, 472 (Mo. Ct. App. 2005). Here, Plaintiff cannot establish a cause of action for false arrest because, as this Court has already determined, his arrest was not unlawful. Rather, Defendant Lene and the County of Adair had probable cause to believe that Plaintiff had committed the offense of child abduction and, thus, were permitted to issue a warrant for his arrest. Defendants are entitled to summary judgment on this claim.

**D.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

To prevail on his final state law claim of intentional infliction of emotional distress in Missouri, Plaintiff must demonstrate that: (1) Defendants' conduct was extreme and outrageous;

18

(2) Defendants acted in an intentional or reckless manner; and (3) Defendants' conduct caused severe emotional distress that resulted in bodily harm. *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 316 (Mo. 1993) (en banc). "It is not enough that the defendant may have acted with tortious or even criminal intent," rather, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *St. Anthony's Med. Ctr. v. H.S.H.*, 974 S.W.2d 606, 611 (Mo. Ct. App. 1998).

In this case, it cannot be said that Defendants' conduct rose to the level of that which is extreme and outrageous. Defendant Lene, who was unsure how to handle the unique situation, consulted with the Adair County attorney about how to proceed and filed a probable cause statement, explaining why he believed it was necessary to issue a warrant for Plaintiff's arrest. This behavior was not only entirely reasonable, it was responsible. Further, the only evidence presented to the Court demonstrates that Defendant Lene acted in good faith, and in no way intended to cause harm of any kind to Plaintiff. Plaintiff has not offered any contrary evidence of bad motive that would create a genuine issue of material fact with respect to this issue. Thus, Defendants are entitled to summary judgment on this claim.

## V. CONCLUSION

Plaintiff has failed to establish that a genuine issue of material fact exists with respect to each of his four claims: violation of constitutional rights, malicious prosecution, false arrest, and intentional infliction of emotional distress. As such, Defendants' Motion for Summary Judgment is granted in all respects.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [doc. #61] is **GRANTED**.

Dated this 21st Day of November, 2008.

　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　E. RICHARD WEBBER
　　　　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE